UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ANTHONY BUTLER,<br><br>Petitioner,<br>v.<br>W. GITTERE, *et al.*,<br><br>Respondents. | Case No. 3:20-cv-00560-MMD-CSD<br><br>ORDER |

## I.  SUMMARY

Petitioner Anthony Butler, a Nevada state prisoner, filed a Second Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Second Amended Petition" (ECF No. 50)). This habeas matter is before the Court on Respondents' Motion to Dismiss ("Motion" (ECF No. 51)). For the reasons discussed below, Respondents' Motion is granted, and the Second Amended Petition is dismissed as untimely.

## II.  BACKGROUND

Butler challenges a 2012 conviction and sentenced imposed by the Eighth Judicial District Court for Clark County. He entered a guilty plea to one count of sexual assault with a minor under the age of 14 and three counts of lewdness with a child under the age of 14. (ECF No. 34-34.) The state district court entered a judgment of conviction sentencing Butler on each count to ten years to life with the possibility of parole. (*Id*.) Butler did not appeal the conviction or file a state habeas petition within the time allowed under Nevada law.

In September 2012, prior to the state district court entering his judgment of conviction, Butler filed his first federal habeas petition. *See Butler v. State of Nevada*, Case No. 2:12-cv-1682-MMD-GWF. The Court dismissed his first federal habeas petition without prejudice for failure to exhaust his state remedies. In July 2018, Butler filed a *pro*

*se* Motion to Modify Sentence and the state district court denied the motion. (ECF Nos. 34-36, 35-17.) In August 2018, he filed a state habeas petition. (ECF No. 35-11.)

In September 2020, Butler initiated the instant federal habeas proceedings. (ECF No. 1-1.) Following appointment of counsel, he moved to stay the instant proceedings to file a motion for relief from judgment in his 2012 federal habeas case, which was denied. (ECF Nos. 16, 18.) Following reopening this matter, Butler filed his second amended habeas petition ("Second Amended Petition"). (ECF No. 50.) Respondents move to dismiss the Second Amended Petition as untimely, second or successive,[1] and/or as unexhausted/procedurally defaulted. (ECF No. 51.)

## III. DISCUSSION

The Antiterrorism and Effective Death Penalty Act ("AEDPA") establishes a one-year limitation period for state prisoners to file a federal habeas petition pursuant to 28 U.S.C. § 2254. The one-year limitation period, i.e., 365 days, begins to run from the latest of four possible triggering dates, with the most common being the date on which the petitioner's judgment of conviction became final by either the conclusion of direct appellate review or the expiration of the time for seeking such review. *See id.* § 2244(d)(1)(A). The AEDPA limitations period is tolled while a "properly filed" state post-conviction proceeding, or other collateral review is pending. 28 U.S.C. § 2244(d)(2). However, an untimely state petition is not "properly filed" and thus does not toll the federal statute of limitations. *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005). No statutory tolling is permitted for the time that a federal habeas petition is pending. *Duncan v. Walker*, 533 U.S. 167, 181-82 (2001).

The parties agree that the AEDPA deadline expired on October 25, 2013, and that Butler filed his federal petition after the one-year limitation period under AEDPA expired. Butler argues that he can overcome any procedural or timeliness bars because he is entitled to equitable tolling based on his cognitive deficits, which prevented him from filing

---

[1] In their reply, Respondents withdraw their argument that the Second Amended Petition should be dismissed as second or successive. (ECF No. 58 at 12.)

2

a timely petition before the statute of limitations ran. He asserts that the Court should grant him equitable tolling from the expiration of the AEDPA deadline on October 25, 2013, to the date that he filed his state habeas petition on August 28, 2018. (ECF No. 52 at 2.)

The one-year period of limitation of 28 U.S.C. § 2244(d)(1) is subject to equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 645 (2010). "[A] 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. at 418 (2005)). Equitable tolling does not stop the limitations clock the way that statutory tolling does.

However, an "external force"—not mere oversight, miscalculation, or negligence—must have caused the untimeliness. *Velasquez v. Kirkland*, 639 F.3d 964, 969 (9th Cir. 2011) (quotation marks omitted). In addition, a causal relationship must exist between the extraordinary circumstance and the late filing. *See e.g., Bryant v. Ariz. Atty Gen.*, 499 F.3d 1056, 1061 (9th Cir. 2007). Equitable tolling is "unavailable in most cases," *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999) and "the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule." *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (internal quotation marks and citation omitted). Butler "must show that he has been reasonably diligent in pursuing his rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well, up to the time for filing his claim in federal court." *Smith v. Davis*, 953 F.3d 582 at 598-599 (9th Cir. 2020).

A serious mental impairment can constitute an extraordinary circumstance. To obtain equitable tolling because of mental impairment:

(1) *First*, a petitioner must show his mental impairment was an "extraordinary circumstance" beyond his control by demonstrating the impairment was so severe that either

    a. Petitioner was unable to rationally or factually understand the need to timely file, or

3

> b. Petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing.
>
> (2) *Second*, the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances including reasonably available access to assistance.

*Bills v. Clark*, 628 F.3d 1092, 1099-1100 (9th Cir. 2010) (internal quotation marks and citations omitted). The Court must consider whether the mental impairment made it impossible for Butler to timely file a habeas petition on his own. *Stancle v. Clay*, 692 F.3d 948, 959 (9th Cir. 2012).

To support his claim that he suffers from cognitive deficits, Butler proffers that he was deemed incompetent to stand trial on two separate occasions during the pretrial proceedings leading up to his plea and conviction. (ECF No. 52 at 4.) In 2008, the Las Vegas Justice Court ordered a competency evaluation for Butler. (ECF No. 33-4.) Although Butler was initially found competent to stand trial, less than a year later, the state district court determined that he was incompetent and Butler was transferred to Lake's Crossing Center, a psychiatric facility, for further evaluation. (ECF Nos. 33-28, 33-30.) In October 2009, the state court determined that Butler was competent. (ECF No. 33-33.) After Butler's attorney requested another evaluation, the state court determined Butler was incompetent in December 2009. (ECF No. 34-4.) After another round of medical evaluations at Lake's Crossing, however, Butler was found competent. (ECF No. 34-10.)

Butler was placed in special education classes throughout his academic career, but left school in 8th or 9th grade. (ECF No. 37-1 at 9.) He has difficulty reading and writing. (*Id*. at 17.) A 2004 psychological evaluation provides that Butler scored low on intelligence testing and that his "true IQ is within a range of scores from 53 to 63 which is in the Intellectually Deficient range." (ECF No. 45-5 at 92.) His language abilities placed him in the 1st grade, while his math abilities placed him at the 4th grade level. (*Id*. at 93.)

At the age of 14, a clinical psychologist diagnosed Butler with Depressive Disorder. (*Id.* at 94.) The clinical psychologist's evaluation report indicates that Butler's mother

provided that Butler had mental problems since he was five years old. (*Id*. at 91.)

In 2004, his mother indicated that Butler had auditory and visual hallucinations approximately 2 times per month. (ECF No. 45-2 at 5.) In June 2004, Butler threatened to kill himself, "holding a knife at his throat and wrists and threatening to hurl hot syrup on those who would intervene." (*Id*.) Butler was briefly hospitalized, and his mother was admonished by the school psychologist to bring him to a physician for a full physical evaluation and to receive mental health treatment for counseling issues. (*Id*.)

In July 2004, Butler's mother called 911 because Butler was walking down the street with a BB gun, shooting at people and houses. (ECF No. 45-5 at 101.) Butler left their home in an angry state with the BB gun and as his mother and brother chased after him, he said he was going to kill them all in their sleep by stabbing them. (*Id*.) Butler attempted to commit suicide. (*Id*. at 109.) He had attempted to jump in front passing vehicles on two occasions and had cut his arm with a piece of glass in an attempt to kill himself. (*Id*.) While awaiting trial and during his treatment at Lake's Crossing, Butler was treated for Bi-Polar Disorder and Schizophrenia. (ECF No. 45-4 at 223.) He was also diagnosed as Schizoaffective. (*Id*. at 213.)

In a 2009 psychological evaluation of competency report, a psychologist provided that Butler demonstrated the ability to understand the nature of the criminal charges against him, to understand the nature and purpose of the court proceedings, and to aid and assist his counsel in his defense at any time during the proceedings with a reasonable degree of rational understanding. (ECF No. 37-1 at 8.) The report noted that Butler's intelligence level is estimated at being "in the Low Average or Borderline range of intellectual functioning." (*Id*. at 10.) The report provides that "[Butler] has realized that it would be in his best interests to be found incompetent to stand trial, and has no motivation to cooperate in a discussion that he knows could illustrate his competency," and that he "has demonstrated that he is quite capable of cooperating with others when he perceives it as being in his best interests to do so." (*Id*. at 12.) In his previous Lake's Crossing hospitalization, he exhibited a basic understanding of his alleged offenses, he knew the

pleas available to him, and he could describe the roles of courtroom participants. (*Id*.)

Butler has not shown he "was unable rationally or factually to personally understand the need to timely file" or that his "mental state rendered him unable personally to prepare a habeas petition and effectuate its filing." *Bills*, 628 F.3d at 1100. Although he was deemed incompetent on two separate occasions in 2009, following evaluation at a psychiatric facility he was found to be competent. The Supreme Court has recognized that "[m]ental illness itself is not a unitary concept. It varies in degree. It can vary over time. It interferes with an individual's functioning at different times in different ways." *Indiana v. Edwards*, 554 U.S. 164, 175 (2008). Butler's proffered evidence in support of his cognitive deficits shows that he struggles with mental health, as he was diagnosed with Bi-Polar Disorder, Depressive Disorder, and Schizophrenia. Although his intelligence levels were estimated as being on the lower side of average or borderline functioning, the evidence does not show that he was unable to understand, rationally or factually, the need to timely file his petition, or that his mental state rendered him unable to prepare the habeas petition and effectuate its filing. Butler has not explained how his low IQ made it impossible for him to understand the need to file a timely habeas petition in federal court. *See Sauceda-Contreras v. Spearman*, 749 F.App'x 500, 502 (9th Cir. 2018) (holding that "lack of legal knowledge and low literacy level . . . would not entitle him to equitable tolling"); *Baker v. California Dept. of Corrections*, 484 F.App'x 130, 131 (9th Cir. 2012) (holding that "[l]ow literacy levels" are not an extraordinary circumstance warranting equitable tolling).

Notably, in September 2012, although he received assistance from other inmates, Butler filed his first federal habeas petition, an application to proceed *in forma pauperis*, and motion for appointment of counsel. The petition was dismissed without prejudice for failure to exhaust his claims in state court. *See Butler v. State of Nevada*, Case No. 2:12-cv-1682-MMD-GWF, ECF No. 1-1. After the limitation period expired, Butler filed a number of *pro se* pleadings in state district court.

- On July 6, 2018, Butler filed a motion to dismiss counsel and motion to

6

modify sentence. (ECF No. 34-35, 34-36.)

- On July 9, 2018, Butler filed a notice of appeal. (ECF No. 34-37.)

- On July 12, 2018, Butler filed a motion to file out of time appeal. (ECF No. 35-1.)

- On August 3, 2018, Butler filed a motion for transcripts. (ECF No. 35-6.)

- On August 7, 2018, Butler filed a motion for rehearing in the Nevada appellate court. (ECF No. 35-7.)

- On August 20, 2018, Butler filed a motion for order to transport and motion to document judicial notice. (ECF No. 35-8, 35-9.)

- On August 28, 2018, Butler filed his state habeas petition. (ECF No. 35-11.)

Butler has not established the existence of an extraordinary circumstance based on mental impairment.

Butler argues that an evidentiary hearing is warranted to "hear directly from [Butler] and the neuropsychologist who examined him." (ECF No. 52 at 2.) He fails to explain what additional evidence could be adduced. He does not explain what testimony he or the neuropsychologist would offer beyond the information already provided. Butler is not entitled to an evidentiary hearing because he has not shown a causal connection between his cognitive deficits and his delay in filing his petition. *See Nivette v. Yates,* 386 F. App'x. 592, 953 (9th Cir. July 2, 2010), 2010 WL 2725578; *Bryant v. Arizona Atty. Gen.*, 499 F.3d at 1061; *see also Gaston v. Palmer*, 417 F.3d 1030, 1034-35 (9th Cir. 2005), *reversed on other grounds*, 447 F.3d 1165 (9th Cir. 2006). Accordingly, an evidentiary hearing on equitable tolling is unwarranted.

Butler does not set forth efforts constituting reasonable diligence. He asserts that he did not receive the order dismissing his first federal habeas petition without prejudice because he was transferred to another facility and that he relied on the assistance of other inmates. He does not address the nearly 6-year period between his first federal habeas petition and the filing of his state habeas petition, during which he made no efforts to assert his claims. Butler fails to meet the reasonable diligence requirement for equitable

tolling.

## IV. CERTIFICATE OF APPEALABILITY

This is a final order adverse to Butler. Rule 11 of the Rules Governing Section 2254 Cases requires the Court to issue or deny a certificate of appealability ("COA"). Therefore, the Court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002). Under 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether this Court's procedural ruling was correct. *Id.*

Applying these standards, this Court finds that a certificate of appealability is unwarranted.

## V. CONCLUSION

It is therefore ordered that Respondents' Motion to Dismiss (ECF No. 51) is granted. The Second Amended Petition is dismissed as untimely.

It is further ordered that Respondents' unopposed third Motion for Enlargement of Time (ECF No. 57) is granted *nunc pro tunc*.

It is further ordered that a certificate of appealability will not issue.

It is further ordered that the Clerk of the Court is kindly directed to enter judgment accordingly and close this case.

DATED THIS 20th Day of February 2026.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

8